UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

WINDWARD BORA, LLC,

                              Plaintiff,

    - v -                                                      Civ. No. 1:18-CV-402
                                                                         (DJS)

WILMINGTON SAVINGS FUND SOCIETY, FSB,
*Not in its Individual Capacity as Certificate Trustee*
*For NNPL Trust Series 2012-1 its Successors and*
*Assigns doing business as* Christina Trust,
                             Defendant.
_____

**APPEARANCES:**                                   **OF COUNSEL:**

HASBANI & LIGHT, P.C.                 DANIELLE P. LIGHT, ESQ.
Counsel for Plaintiff
450 Seventh Avenue
Suite 1408
New York, NY 10123

JEFFERY KOSTERICH, LLC           DENISE SINGH SKEETE,
Counsel for Defendant                   ESQ.
68 Main Street
Tuckahoe, NY 10707

**DANIEL J. STEWART**
**United States Magistrate Judge**

# DECISION AND ORDER

## I. RELEVANT BACKGROUND

Plaintiff has brought this action pursuant to New York Real Property Actions and Proceedings Law ("RPAPL") Article 15 seeking to compel the determination of Defendant's claims with respect to a mortgage, and to discharge the mortgage pursuant

1

to RPAPL § 1501(4). *See* Dkt. No. 1, Compl. The Court has jurisdiction over the action based upon diversity of citizenship pursuant to 28 U.S.C. § 1332. *Id.* at pp. 2-3.

On April 28, 2005, Wayne Carter and Gwendolan Carter ("Borrowers") borrowed $155,769.00 from Syracuse Securities, Inc. in a note, and executed a mortgage of the premises (the "Mortgage") as collateral, which was recorded on June 20, 2005.[1] Dkt. No. 16-10, Dolan Aff., ¶¶ 5-6; Dkt. No. 16-2, Skeete Decl., Exs. C & D.[2] Syracuse Securities, Inc., then assigned the Mortgage to Washington Mutual Bank, FA on April 28, 2005; the assignment of mortgage was recorded on June 20, 2005. Dolan Aff. at ¶ 7; Skeete Decl., Ex D. Washington Mutual Bank, FA assigned the Mortgage to Wells Fargo Bank, N.A. on January 10, 2007, which was recorded on January 29, 2007. Dolan Aff. at ¶ 8; Skeete Decl., Ex. D. On January 19, 2010 the Mortgage was modified by Wells Fargo Bank, N.A. by way of a Housing and Urban Development (HUD) loan modification agreement, which was recorded on July 26, 2010. Dolan Aff. at ¶ 9; Skeete Decl., Ex. E. Wells Fargo Bank, N.A. then assigned the Mortgage to the Secretary of HUD on November 28, 2014, which was recorded on July 16, 2015. Dolan Aff. at ¶ 10; Skeete

---

[1] Plaintiff failed to file a Statement of Undisputed Material Facts pursuant to Local Rule 7.1(a)(3), or to respond to Defendant's Statement of Undisputed Material Facts. The Court therefore deems the facts set forth in Defendant's Statement of Material Facts admitted, and accepts Defendant's assertion of facts to the extent they are supported by the record. *See Campbell v. Consol. Rail Corp.*, 2008 WL 3414029, at *3 (N.D.N.Y. Aug. 8, 2008).

[2] Defendant attaches the loan documents to an attorney affirmation rather than to the declaration of an individual with knowledge of the business records. Plaintiff's submission of evidence is similar, although Plaintiff includes a "request for judicial notice." The parties attach the same central documents to their motions, and neither party raises any objection or concern regarding the documents submitted. The Court will take judicial notice of these undisputed documents that are publicly recorded documents. *See, e.g., Im v. Bayview Loan Serv. LLC*, 2018 WL 840088, at *3 n.5 (S.D.N.Y. Feb. 12, 2018); *Alexander v. Nationstar Mortg.*, LLC, 2017 WL 6568057, at *1 (S.D.N.Y. Dec. 22, 2017); *Estate of Leventhal ex rel. Bernstein v. Wells Fargo Bank, N.A.*, 2015 WL 5660945, at *4 (S.D.N.Y. Sept. 25, 2015); *Gordon v. First Franklin Fin. Corp.*, 2016 WL 792412, at *1 n.2 (E.D.N.Y. Feb. 29, 2016).

Decl., E. The Secretary of HUD assigned the Mortgage to V Mortgage Acquisitions, LLC on July 13, 2015, which was recorded on July 16, 2015. Dolan Aff. at ¶ 11; Skeete Decl., Ex. E. V Mortgage Acquisitions, LLC assigned the Mortgage to Kondaur Capital Corporation, as Separate Trustee of Matawin Ventures Trust 2014-3 ("Kondaur") on July 15, 2015, which was recorded on July 16, 2016. Dolan Aff. at ¶ 12; Skeete Decl., Ex. E. Kondaur assigned the Mortgage to NNPL Trust Series 2012-1 on September 8, 2015, which was recorded on September 18, 2015. Dolan Aff. at ¶ 13; Skeete Decl., Ex. E. NNPL Trust Series 2012-1 assigned the Mortgage to Defendant on June 26, 2017, which was recorded on August 8, 2017. Dolan Aff. at ¶ 12; Skeete Decl., Ex. E. Defendant assigned the Mortgage to Waterfall on March 29, 2018, which was recorded on May 13, 2018. Dolan Aff. at ¶ 15; Skeete Decl., Ex. E.

The Borrowers have failed to make payments on the loan since July 1, 2010. Dolan Aff. at ¶ 16. Defendant's predecessor-in-interest commenced a foreclosure action in the New York State Supreme Court, Saratoga County on October 19, 2010; that action was dismissed on July 12, 2016, before Defendant's predecessor-in-interest had obtained a judgment of foreclosure and sale. Skeete Decl., Exs. A & G.

Plaintiff commenced this action on April 2, 2018. Plaintiff has now moved for summary judgment, arguing that the Mortgage must be extinguished because the statute of limitations has run on Defendant's time to foreclose. *See* Dkt. No. 15-1, *generally*. Defendant opposes Plaintiff's Motion and cross-moves for summary judgment dismissing Plaintiff's Complaint, arguing that the statute of limitations does not apply to it because the loan is an FHA loan, and because Defendant is an assignee of a federal agency. *See*

3

Dkt. No. 16, *generally*. Defendant further contends that the 2010 action did not accelerate the Mortgage debt, and that the statute of limitations therefore did not begin to run in 2010. *Id.* Plaintiff opposed Defendant's cross-motion, Dkt. No. 19, and Defendant has submitted a reply in further support of its Motion, Dkt. No. 23.

## II. RELEVANT LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 56(a), summary judgment is appropriate only where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the burden to demonstrate through "pleadings, depositions, answers to interrogatories, and admissions on file, together with [ ] affidavits, if any," that there is no genuine issue of material fact. *F.D.I.C. v. Giammettei*, 34 F.3d 51, 54 (2d Cir. 1994) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

To defeat a motion for summary judgment, the non-movant must set out specific facts showing that there is a genuine issue for trial, and cannot rest merely on allegations or denials of the facts submitted by the movant. FED. R. CIV. P. 56(c); *see also Scott v. Coughlin*, 344 F.3d 282, 287 (2d Cir. 2003) ("Conclusory allegations or denials are ordinarily not sufficient to defeat a motion for summary judgment when the moving party has set out a documentary case."); *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 525-26 (2d Cir. 1994). To that end, sworn statements are "more than mere conclusory allegations subject to disregard . . . they are specific and detailed allegations of fact, made under penalty of perjury, and should be treated as evidence in deciding a summary judgment motion" and the credibility of such statements is better left to a trier of fact.

4

*Scott v. Coughlin*, 344 F.3d at 289 (citing *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983) and *Colon v. Coughlin*, 58 F.3d at 872).

When considering a motion for summary judgment, the court must resolve all ambiguities and draw all reasonable inferences in favor of the non-movant. *Nora Beverages, Inc. v. Perrier Group of Am., Inc.*, 164 F.3d 736, 742 (2d Cir. 1998). "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994). Summary judgment is appropriate "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### III. ANALYSIS

#### A. Whether the Mortgage was Accelerated

Plaintiff contends that the Mortgage was accelerated when Defendant commenced the foreclosure action in 2010, and that the acceleration was never revoked via an affirmative and unambiguous act by Defendant or its predecessors. Dkt. No. 15-1 at pp. 5-6; Dkt. No. 19 at pp. 10-13.

The loan provides that it is governed by federal law and the law of the jurisdiction in which the Property is located, New York State. Dkt. No. 15-6, Mortgage, ¶ 14. As contract interpretation is a matter of state law, the question of whether the Mortgage was

5

accelerated is a question of New York state law. *See Hugo Boss Fashions, Inc. v. Fed. Ins. Co.*, 252 F.3d 608, 618 (2d Cir. 2001).

> As a general matter, an action to foreclose a mortgage may be brought to recover unpaid sums which were due within the six-year period immediately preceding the commencement of the action. With respect to a mortgage payable in installments, separate causes of action accrued for each installment that is not paid, and the statute of limitations begins to run, on the date each installment becomes due. However, even if a mortgage is payable in installments, once a mortgage debt is accelerated, the entire amount is due and the Statute of Limitations begins to run on the entire debt.

*Wells Fargo Bank, N.A. v. Burke*, 94 A.D.3d 980, 982 (2d Dep't 2012) (internal citations and quotation marks omitted). The acceleration of a mortgage debt is important because it begins the running of the six year statute of limitations.

Defendant contends that commencement of the 2010 action did not accelerate the debt. Dkt. No. 16 at pp. 11-16. Defendant points to two documents to support this argument. First, the loan documents provide that "Borrower has a right to be reinstated if Lender has required immediate payment in full . . . even after foreclosure proceedings are instituted," subject to certain requirements and exceptions. Mortgage at ¶ 10. Similarly, HUD regulations provide that "[i]f the owner cures a default . . . prior to completion of foreclosure proceedings, the lender must reinstate the loan." Dkt. No. 16-8, HUD Regulations, § 9-6. Defendant argues that because the Borrowers had the right to reinstate the loan up until the time the foreclosure proceeding was complete, the Mortgage still essentially remained an installment contract until a judgment was entered, and the Mortgage was therefore never actually accelerated. Dkt. No. 16 at pp. 11-16 (citing *Nationstar Mortg., LLC v. MacPherson*, 56 Misc.3d 339 (Sup. Ct., Suffolk Cty.

6

Apr. 3, 2017)). In response, Plaintiff contends that filing a foreclosure action constituted an affirmative action to accelerate a mortgage debt, and the language in the loan documents does not alter this fact. Dkt. No. 19 at pp. 10-13.

The New York Appellate Division, Second Department recently decided the issue of whether a reinstatement provision in a mortgage, which gives the borrower the option to de-accelerate the maturity of the debt, prevents the debt from being validly asserted. *Bank of New York Mellon v. Dieudonne*, 171 A.D.3d 34, 35 (2d Dep't Mar. 13, 2019). In that case, the plaintiff contended that the statute of limitations did not begin to run until the borrower's rights under the reinstatement provision in the mortgage were extinguished. *Id.* The court determined that the reinstatement provision was not a condition precedent to the acceleration of the mortgage, and that the statute of limitations started to run when the plaintiff exercised its option to accelerate. *Id.* at 35-37.

As the Second Department described, "[w]here, as here, the claim is for payment of a sum of money allegedly owed pursuant to a contract, the cause of action accrues when the plaintiff possesses a legal right to demand payment." *Id.* at 36-37 (internal quotation marks omitted) (citation omitted). There the court explained the general rule that

> even if a mortgage is payable in installments, the terms of the mortgage may contain an acceleration clause that gives the lender the option to demand due the entire balance of principal and interest upon the occurrence of certain events delineated in the mortgage. Where the terms of the mortgage provide that the acceleration of the maturity of a mortgage debt on default is made optional with the holder of the note and mortgage, some affirmative action must be taken evidencing the holder's election to take advantage of the accelerating provision, and until such action has been taken the provision has no operation. Once a mortgage has been validly

7

accelerated in accordance with the terms of the mortgage, the entire amount is due and the Statute of Limitations begins to run on the entire debt.

*Id.* at 37 (internal quotation marks and citations omitted).

"A borrower generally must be provided with notice of the lender's decision to exercise an option to accelerate the maturity of a loan, and such notice must be 'clear and unequivocal'. 'Commencement of a foreclosure action may be sufficient to put the borrower on notice that the option to accelerate the debt has been exercised.'" *Id.* at 38 (internal citations omitted).

The Second Department in *Dieudonne* held that the reinstatement provision did not prevent the lender from validly accelerating the mortgage debt. *Id.* at 39. As here, the plaintiff in that case argued that

> because its right to accelerate the entire outstanding debt was subject to the defendant's right, under certain circumstances, to de-accelerate that portion of the debt, the plaintiff's right to accelerate the debt was subject to a condition precedent and the statute of limitations did not begin to run until the defendant's right to de-accelerate was extinguished in accordance with the terms of the mortgage.

*Id.* The court there noted that "a cause of action for payment of a sum of money allegedly owed pursuant to a contract accrues when the plaintiff possesses a legal right to demand payment," and that, as with the Mortgage at issue in this case, a section of the mortgage explicitly provided conditions that had to be satisfied before the plaintiff was contractually entitled to exercise its option to accelerate the entire outstanding debt. *Id.*; *see* Mortgage at ¶ 9. It described that, as with the Mortgage at issue in this case, the reinstatement provision was not listed as a condition required to accelerate the mortgage, and there was no language in the reinstatement paragraph indicating that it served as a

8

condition precedent to the right to accelerate. *Bank of New York Mellon v. Dieudonne*, 171 A.D.3d at 39-40; *see* Mortgage at ¶¶ 9-10. As with the Mortgage at issue here,

> to the contrary, the language of [the reinstatement paragraph] indicates that the plaintiff's right to accelerate the entire debt may be exercised *before* the defendant's rights under the reinstatement provision [ ] are exercised or extinguished. Accordingly, contrary to the plaintiff's contention, the extinguishment of the defendant's contractual right to de-accelerate the maturity of the debt pursuant to the reinstatement provision in paragraph 19 of the mortgage was not a condition precedent to the plaintiff's acceleration of the mortgage."

*Bank of New York Mellon v. Dieudonne*, 171 A.D.3d at 40. The Second Department explicitly noted that, "[t]o the extent that decisional law interpreting the same contractual language holds otherwise, it should not be followed," and cited specifically to *Nationstar Mortg., LLC v. MacPherson*, 56 Misc.3d 339 (Sup. Ct., Suffolk Cty. Apr. 3, 2017), the primary case on which Defendant relies in support of its argument that the Mortgage was not accelerated.

Here, as in *Dieudonne*, Plaintiff demonstrated that the Mortgage provides that the lender may require immediate payment in full of all sums secured by the Mortgage if the borrower failed to satisfy certain conditions under the Mortgage. Mortgage at ¶ 9; *Bank of New York Mellon v. Dieudonne*, 171 A.D.3d at 38. In the 2010 action, Defendant's predecessor-in-interest explicitly called due the entire amount secured by the Mortgage. Dkt. Nos. 19-1 & 19-2 (affidavit from officer of Wells Fargo Bank, N.A. stating that it "elected to call due the entire unpaid principal balance" based on the default); Dkt. No. 15-15 (Summons and Complaint from 2010 action, "elect[ing] to call due the entire amount secured by the mortgage"). Defendant's predecessor-in-interest thus validly

9

exercised its option to accelerate the balance due by filing the summons and complaint in the 2010 foreclosure action. *See* Dkt. Nos. 15-15 & 19-2.

Similarly, Defendant argues that the terms of the Note and Mortgage provide that the mortgagee may not accelerate when not permitted by HUD regulations; HUD Regulations provide that if the mortgagor cures a default prior to completion of foreclosure proceedings, the mortgagee must reinstate the loan. Dkt. No. 16 at p. 11; *see* Mortgage at ¶ 9; Dkt. No. 15-5, Note, ¶ 6. However, as discussed above, Defendant does not contend that Plaintiff actually satisfied the reinstatement provision, and the extinguishment of that right was not a condition precedent to acceleration. As such, the requirement that the mortgagee reinstate the loan if the mortgagor cures a default prior to foreclosure proceedings provides no basis for finding the Mortgage was not accelerated in this case. Defendant does not point to any other HUD regulation that would have prevented the loan from being accelerated. As such, this argument also fails. The commencement of the 2010 action did accelerate the loan.

## B. Whether the Loan is Subject to the Statute of Limitations

Defendant contends that it is not subject to the statute of limitations because the loan is a Federal Housing Authority ("FHA") loan, and because Defendant is an assignee of HUD. Dkt. No. 16 at pp. 9-11. Defendant asserts that the statute of limitations does not apply to federal agencies or their assignees. In opposition, Plaintiff argues initially that Defendant has not demonstrated that the Mortgage is FHA-insured. Dkt. No. 19 at pp. 2-6. Plaintiff points out that the Dolan Affidavit submitted by Defendant only states that the Note, Mortgage, and Loan Modification Agreement contain an FHA case number,

10

and that a notation on the Loan Modification Agreement indicates that it is a HUD Modification Agreement; it does not provide any further documentation or affirmative statements regarding the loan's FHA status. *Id.* at pp. 3-4. Plaintiff states that there is no indication that the loan is necessarily still in the FHA program, if it ever was at all, as loans can be removed from the FHA program. *Id.* at pp. 4-6. In addition, Plaintiff argues that HUD held the loan for less than eight months, and that Defendant should not be entitled to the protection of being excepted from the statute of limitations that was intended to benefit the federal government. *Id.* at pp. 6-10. Plaintiff also describes the role HUD has recently played in owning loans, and that it does not collect or enforce debts from the loans, and may not benefit at all from a foreclosure action. *Id.* at pp. 7-10.

In the summary judgment context, the Court must address the evidence in the record before it. At oral argument Plaintiff's counsel stated that she would expect there to be other documents, not produced here, establishing that the loan had been an FHA loan and suggested that the absence of such records in the record meant that Defendant had failed to carry its burden on the question of the FHA status of the loan. The record, however, establishes that the mortgage in question bears an FHA Case Number and that mortgage was filed in the office of the Saratoga County Clerk. Dkt. No. 16-6. Plaintiff's speculation about what may have subsequently happened to the loan does not, absent evidentiary proof to the contrary, rebut the proof provided by Defendant.[3]

---

[3] Plaintiff, for example, has submitted information demonstrating that, if the loan ever was in the FHA program, it is possible that it may have been removed, either by FHA removing the loan, or upon request by the mortgagor, but offers no evidence to suggest that this process was ever undertaken.

"[U]nless Congress specifically provides otherwise, the federal government is not subject to any statute of limitations in enforcing its rights." *Capozzi v. U.S.*, 1992 WL 409963, at *2 (D. Conn. Jan. 29, 1992) (citing *United States v. Podell*, 572 F.2d 31, 35 n.7 (2d Cir. 1978)). "There is no federal statute of limitations applicable to mortgage foreclosure actions brought by the United States or its federal agencies. That rule applies equally to an assignee of a federal agency, including a commercial lender, and includes the benefit of immunity from a state limitations period." *Fleet Nat. Bank v. D'Orsi*, 26 A.D.3d 898, 899-900 (4th Dep't 2006) (internal citations omitted); *see also Long Island Realty Grp. VII v. U.S. Dep't of Hous. & Urban Dev.*, 2005 WL 2179687, at *4 (E.D.N.Y. Sept. 9, 2005).

The record in this case establishes that HUD was assigned the Mortgage in 2014. Dkt. No. 15-10. The Mortgage has since been assigned multiple times and is now held by Defendant. *See generally* Dkt. No. 16-1. Plaintiff argues that Defendant should not be exempt because the federal government does not stand to benefit from Defendant acting as its assignee. This argument is largely conclusory, however. Plaintiff cites to no legal authority contrary to that cited above, indicating that an assignee of a federal agency does not receive the benefit of being immune from the limitations period. Plaintiff points to a letter from HUD, which it describes as providing that HUD does not seek to collect on defaulted loans, and is barred by Congress from doing so. *See* Dkt. No. 19 at pp. 8-9. The documents cited, however, do not expressly make the point asserted by Plaintiff. While Plaintiff is correct that it is not clear that the federal government will directly benefit from Defendant acting as its assignee, there are indirect benefits to HUD that are

12

"inherent in these mortgage obligations that are not burdened by time limitations. This allows them to be bundled and traded as investment vehicles and permits such federally insured loans to be offered to the public at reduced interest or expense." *In re McFarland*, 7 Misc. 3d 1003(A) (Sur. Ct. Nassau Cty. 2005). At oral argument Plaintiff also asserted that HUD may have held the Mortgage, but not the Note, and as a result could never have foreclosed on the Mortgage. Here, too, however, Plaintiff offers a mere possibility unsupported by evidentiary proof. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts.").

This case is distinguishable from those in which courts have found the exception does not apply. In *Gulnick*, the court found the plaintiff did not demonstrate it was entitled to the exception. In that case, the plaintiff alleged the loan was insured by HUD, but failed to show that HUD had ever held the mortgage. *Bank of Am., N.A. v. Gulnick*, 170 A.D.3d 1365, 1367 (3d Dep't 2019); *see also Fleet Nat. Bank v. D'Orsi*, 26 A.D.3d at 900 (plaintiff failed to establish a federal agency ever held the mortgage or had the right to foreclose on the mortgage). Here, the parties do not dispute that HUD did hold the Mortgage.

In addition, there is a "strong presumption against time-barring the government's attempts to enforce its rights," and "unless Congress specifically provides otherwise, the federal government is not subject to any statute of limitations in enforcing its rights." *Capozzi v. U.S.*, 1992 WL 409963, at *2 (citing *United States v. Podell*, 572 F.2d at 35 n.7). As the evidence in the record indicates that HUD did hold the Mortgage, without a

compelling reason the exception would not apply, this presumption favors finding the exception applies here, and the Court so finds.

## IV. CONCLUSION

For the reasons stated herein, it is hereby

**ORDERED**, that Plaintiff's Motion for Summary Judgment (Dkt. No. 15) is **DENIED**; and it is further

**ORDERED**, that Defendant's Motion for Summary Judgment (Dkt. No. 16) is **GRANTED**; and it is further

**ORDERED**, that the letter request seeking mediation (Dkt. No. 24) is **DENIED as moot**; and it is further

**ORDERED**, that the Complaint (Dkt. No. 1) is **DISMISSED**; and it is further

**ORDERED**, that judgment be entered in favor of Defendant; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Decision and Order upon the parties to this action.

Date: September 27, 2019
       Albany, New York

_____
Daniel J. Stewart
U.S. Magistrate Judge